Carol REYNOLDS, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, and New York State Department of Civil Service, Defendants.**

**No. 83 Civ. 0757 (GLG).**

United States District Court,
S.D. New York.

Aug. 19, 1983.

Robert David Goodstein, New Rochelle, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of New York, New York City, for defendants; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Barbara B. Butler, William H. Mohr, Asst. Attys. Gen., New York City, of counsel.

## OPINION

GOETTEL, District Judge.

This is an action by Carol Reynolds against the New York State Department of Corrections and the New York State Department of Civil Service. She alleges that, for approximately eight months in 1976, the defendants discriminated against her on the basis of her sex and thus violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Before this Court is the defendants' motion to dismiss on the ground of res judicata.

The facts relevant to this motion are not in dispute. In 1976, the plaintiff filed complaints against the state defendants with the Equal Employment Opportunity Commission (EEOC) and the New York State Division of Human Rights (NYSDHR). *See* 42 U.S.C. § 2000e–5(c) (1976).[1] She claimed that the defendants discriminated against her on the basis of her sex by reason of their policy of placing female correction officers only at Bedford Hills, the sole facility for the incarceration of women in the state corrections system. The NYSDHR, however, found no probable cause to believe that the state defendants had engaged in the unlawful discriminatory practice complained of by the plaintiff. The plaintiff appealed to the State Human Rights Appeal Board, which affirmed the decision as "not arbitrary, capricious or an abuse of discretion." Affidavit of William Mohr, Exhibit B (Order of State Human Rights

---

1. It should be noted that, in November 1976, the plaintiff was offered the position of correction officer at the Green Haven Correctional Facility after the state defendants discontinued their policy with regard to selecting and placing correction officers on the basis of sex. Nevertheless, the plaintiff elected to pursue her claim of discrimination.

Appeal Board). She then sought review by the New York State Appellate Division, which apparently found that sex was a bona fide occupational qualification (BFOQ) for the position of correction officer and affirmed the determination of the Appeal Board. *Reynolds v. Kramarsky,* 64 A.D.2d 636, 407 N.Y.S.2d 443 (2d Dep't 1978).[2]

Following the decision by the Appellate Division, the EEOC considered the plaintiff's claims. On April 29, 1982, it concluded that "reasonable cause exists to believe that [the state defendants] violated Title VII by denying [the plaintiff] a job as a Correction Officer between March 10, 1976 and November 15, 1976 because of her sex," and invited the parties to embark on the conciliation process. Complaint, Exhibit IV at 4 (EEOC Determination). When conciliation efforts proved unsuccessful, however, the EEOC notified the plaintiff of her right to sue in federal court. Accordingly, she commenced this action on January 25, 1983.

The sole issue raised by the defendants' motion is whether *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), compels the dismissal of this action. In that case, the plaintiff, Kremer, claimed that his former employer's decision not to rehire him constituted unlawful discrimination. Accordingly, he filed a complaint with the EEOC, which deferred to the NYSDHR. *See* 42 U.S.C. § 2000e–5(c) (1976). After an investiga-

tion, the NYSDHR rejected the plaintiff's claim, concluding "that Kremer was not rehired because one employee who was rehired had greater seniority, that another employee who was rehired filled a lesser position than that previously held by Kremer, and that neither Kremer's creed nor age was a factor considered in [the] failure to rehire him." *Kremer, supra,* 456 U.S. at 464, 102 S.Ct. at 1888. This determination was upheld by the State Human Rights Appeal Board and by the New York State Appellate Division.

After the Appellate Division's decision, the EEOC issued a right to sue notice,[3] and Kremer brought suit in federal court under Title VII. The merits of his case were never reached, however, because his complaint was dismissed on the ground of res judicata.

The Supreme Court upheld the dismissal of Kremer's Title VII action. It noted that

[i]n our system of jurisprudence the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum. Such a fundamental departure from traditional rules of preclusion, enacted into federal law [in the full faith and credit statute], can be justified only if plainly stated by Congress. Because there is no "affirmative showing" of a "clear and manifest" legislative pur-

---

2. Citing *Carey v. New York State Human Rights Appeal Board,* 61 A.D.2d 804, 402 N.Y. S.2d 207 (2d Dep't 1978), *aff'd,* 46 N.Y.2d 1068, 390 N.E.2d 301, 416 N.Y.S.2d 794, *appeal dismissed,* 444 U.S. 891, 100 S.Ct. 198, 62 L.Ed.2d 128 (1979), the Appellate Division summarily confirmed the decision of the State Human Rights Appeal Board and dismissed the proceeding without costs or disbursements. *Reynolds v. Kramarsky,* 64 A.D.2d 636, 407 N.Y.S.2d 443 (2d Dep't 1978). In *Carey,* the Appellate Division held that, under the New York Human Rights Law, sex was a BFOQ for the position of correction officer. *Carey, supra,* 61 A.D.2d at 805, 402 N.Y.S.2d at 208–09.

Interestingly, this was not the reason given by the NYSDHR for its finding of no probable cause. Rather, the NYSDHR found no probable cause because

Correctional Services has abolished its procedures with regard to the transfer and reas-

signment of Correction Officers based on sex. The Department of Civil Service is on record that they will honor requests from Correctional Services to establish all preferred lists and open competitive eligible lists for Correction Officers without regard to sex.

Complainant as a result of the removal of sex certification was placed in a training program and was scheduled to report for duty upon completion of training. A temporary incapacity from physical injuries has placed complainant on a medical leave of absence.

Affidavit of William Mohr, Exhibit A (NYSDHR Determination and Order After Investigation).

3. Unlike this case, however, "the EEOC ruled that there was no reasonable cause to believe that the charge of discrimination was true." *Kremer, supra,* 456 U.S. at 465, 102 S.Ct. at 1888.

pose in Title VII to deny res judicata or collateral estoppel effect to a state court judgment affirming that a claim of employment discrimination is unproved, and because the procedures provided in New York for the determination of such claims offer a full and fair opportunity to litigate the merits, [the decision of the Appellate Division bars a Title VII action based on the same facts.]

*Id.* at 485, 102 S.Ct. at 1899 (footnote omitted).

The defendants argue that *Kremer* requires the Court to dismiss this action. The plaintiff, on the other hand, argues that the New York action was dismissed because, under New York law, sex is a BFOQ for the position of correction officer in an all male correctional facility, that the BFOQ exception in New York law is broader than its federal analog, and that, therefore, the holding and rationale of *Kremer* are inapplicable to this case. This Court agrees with the plaintiff that *Kremer* does not require dismissal on the ground of res judicata.

█ The first question is whether the BFOQ exception in the New York Human Rights Law is broader than its federal analog. Section 703(e) of Title VII, 42 U.S.C. § 2000e–2(e) (1976), provides that

[n]otwithstanding any other provision of this subchapter, ... it shall not be an unlawful employment practice for an employer to hire and employ employees ... on the basis of ... sex ... in those certain instances where ... sex ... is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

This is, however, "an extremely narrow exception to the general prohibition of discrimination on the basis of sex." *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977) (footnote omitted). To justify discrimination on these grounds, an employer cannot rely on "stereotyped characterizations of the sexes." *Id.* at 333, 97 S.Ct. at 2728 (footnote omitted). Rather, it must show that there is a factual basis for concluding that "the

essence of the business operation would be undermined by not hiring members of one sex exclusively." *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385, 388 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Stated another way, the employer must show that there is "a factual basis for believing ... that all or substantially all [members of the other sex] would be unable to perform safely and efficiently the duties of the job involved." *Weeks v. Southern Bell Telephone & Telegraph Co.,* 408 F.2d 228, 235 (5th Cir.1969).

In the context of hiring correction officers, only the most unusual circumstances will justify the hiring of members of one sex exclusively. In *Dothard v. Rawlinson, supra,* for example, the Supreme Court upheld Alabama's policy of using only male guards as corrections officers in "contact" positions in male maximum security penitentiaries, but carefully limited its decision to the particular facts of the case, that is, the "peculiarly inhospitable" environment of the Alabama penitentiaries characterized by "'rampant violence'" and "'a jungle atmosphere.'" *Dothard v. Rawlinson, supra,* 433 U.S. at 334, 97 S.Ct. at 2729 (quoting *Pugh v. Locke,* 406 F.Supp. 318, 325 (M.D.Ala.1976).

In the absence of such unusual circumstances, federal courts have been unwilling to characterize sex as a BFOQ for the position of correction officer. *See Griffin v. Michigan Department of Corrections,* 31 Empl.Prac.Dec. (CCH) ¶ 33,482, at 29,221 (E.D.Mich.1982) ("It is consistent with common sense, fairness and the state of the law to say that a blanket exclusion of women, in order to protect them from the rigors and difficulty of the prison system, is clearly unlawful under Title VII.); *see also Gunther v. Iowa State Men's Reformatory,* 462 F.Supp. 952, 956–58 (N.D.Iowa 1979), *aff'd,* 612 F.2d 1079 (8th Cir.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). Indeed, in a case involving the employment practices of the New York State Department of Corrections at the Bedford Hills facility, Judge Owen of this court wrote that "there is no dispute that the job

of a correction officer at Bedford Hills can be equally well performed by any qualified and trained man or woman. Sex is therefore not a [BFOQ], and those positions, absent compelling considerations to the contrary, must be open to any bidder regardless of sex." *Forts v. Ward,* 471 F.Supp. 1095, 1099 (S.D.N.Y.1978), *vacated and remanded on other grounds,* 621 F.2d 1210 (2d Cir.1980) (conclusion that sex was not a BFOQ for the position of correction officer was implicit in the Court of Appeals decision, as well). Thus, it appears that, under Title VII, the defendants would be hard pressed to show that their prior practice of not hiring women, including the plaintiff, for positions as correction officers in male facilities was justified as a BFOQ under Title VII.

Although the statutory language of the New York BFOQ exception is similar to that contained in Title VII,[4] the law in New York is to the contrary. In *Carey v. New York State Human Rights Appeal Board,* 61 A.D.2d 804, 402 N.Y.S.2d 207 (2d Dep't 1978), the New York Appellate Division, Second Department, held that under section 296(1)(d) of the New York Human Rights Law, sex is a BFOQ for the position of correction officer. It noted that

> [w]ith respect to the key issue of whether sex is a bona fide occupational qualification for the position of correction officer, our examination of the record and our own judicial common sense makes it clear that the qualification is required. We are here concerned with persons who are serving terms of imprisonment in correctional facilities in which they are segregated by sex and must be confined under observation and guard at all times; both the needs of the correctional facilities to maintain security by such means as body searches and the

needs of the inmates for privacy in those aspects of their lives in confinement which involve such matters as baths or showers, medical examination and treatment and their psychological security, which is necessary to promote the rehabilitative phases of their confinement, combine to provide a rational basis and a governmental need for limiting contacts in such circumstances to correction officers of the same sex as that of the inmates. Hence the limitation here under attack ... is a valid occupational qualification under section 296 (subd. 1, par. [d] ) of [the Human Rights Law].[5]

*Id.* at 805, 402 N.Y.S.2d at 208–09. This decision was affirmed by the New York Court of Appeals. 46 N.Y.2d 1068, 390 N.E.2d 301, 416 N.Y.S.2d 794, *appeal dismissed,* 444 U.S. 891, 100 S.Ct. 198, 62 L.Ed.2d 128 (1979).

The next question is whether this difference in the interpretations of the two statutes has a bearing on the applicability of *Kremer* to this case. According to the defendants, the *Kremer* decision was based on principles of res judicata (or claim preclusion), and thus, it was the New York judgment that barred Kremer from litigating his Title VII claim based on the same facts. Applying *Kremer* to this case, the defendants contend that, as the Appellate Division's judgment would be res judicata in New York courts, and as this Title VII action is based on the same facts as those presented in the New York State proceedings, this action should be barred regardless of any differences between New York and federal law. We do not, however, think such a conclusion appropriate in this instance.

Whether the *Kremer* Court applied principles of res judicata or whether it applied principles of collateral estoppel,[6] it appears

---

4. *Compare* 42 U.S.C. § 2000e–2(e) (1976) *with* N.Y.Exec.Law § 296(1)(d) (McKinney 1982). Moreover, the New York Appellate Division, Fourth Department, has implied that the scope of the BFOQ exceptions under New York law and federal law are similar. *State Division of Human Rights v. New York State Dep't of*

*Correctional Services,* 61 A.D.2d 25, 28–29, 401 N.Y.S.2d 619, 621–22 (4th Dep't 1978).

5. Interestingly, the *Carey* court did not mention the Supreme Court's decision in *Dothard v. Rawlinson, supra.*

6. At one point in its opinion, the Supreme Court noted that

that the decision was based in part on the Court's conclusion that the "petitioner could not succeed on a Title VII claim consistently with the judgment of the [NYSDHR] that there is no reason to believe he was terminated or not rehired because of national origin or religion." *Id.* at 479–80, 102 S.Ct. at 1896. According to the Court, "[t]he Appellate Division's affirmance of the [NYSDHR's] dismissal necessarily decided that petitioner's claim under New York law was meritless, and thus it also decided that a Title VII claim arising from the same events would be equally meritless." *Id.* at 480, 102 S.Ct. at 1896 (footnote omitted).

Such is not the case here. At the Appellate Division level, the defendants argued that any discrimination against the plaintiff was not unlawful under New York law because of *Carey* and the BFOQ exception.[7] The Appellate Division seemingly agreed because it summarily confirmed the Appeal Board decision and dismissed the case, citing *Carey. See supra* note 2 and accompanying text. Thus, the plaintiffs' claim under New York law was deemed meritless because *Carey* holds that sex is a BFOQ for the position of correction officer. Unlike the situation in *Kremer,* however, this conclusion does not mean that "[the plaintiff] could not succeed on a Title VII claim." As noted above, *Carey* seems to conflict with federal decisions,[8] and it is quite likely that the plaintiff's federal claim will not fail simply because of the BFOQ exception contained in Title VII. Thus, by deciding that the plaintiff's claim under New York law was meritless, the Appellate

Division did not "also decide[ ] that a Title VII claim arising from the same events would be equally meritless."

Given these circumstances, the Court does not believe that *Kremer* mandates dismissal of this action. Such a result would be inequitable, especially since the plaintiff could not raise her federal claims in the state proceedings. Accordingly, the defendants' motion to dismiss is denied.

SO ORDERED.

[t]he lower courts did not discuss whether it is the doctrine of res judicata or collateral estoppel that applies here. Section 1738 [, the full faith and credit statute,] requires dismissal of petitioner's Title VII suit whether his Title VII claim is precluded by the New York judgment or whether he is collaterally estopped by that judgment from complaining that Chemico had discriminated against him. Res judicata has recently been taken to bar claims arising from the same transaction even if brought under different statutes. It may be that petitioner would be precluded under res judicata from pursuing a Title VII claim. However that may be, it is undebata-

ble that petitioner is at least estopped from relitigating the issue of employment discrimination arising from the same events. *Kremer, supra,* 456 U.S. at 481 n. 22, 102 S.Ct. at 1897 n. 22 (citations omitted); *see also id.* at 465 n. 4, 102 S.Ct. at 1889 n. 4.

7. Indeed, this was the only argument proffered by the defendants.

8. The fact that the New York court's decision may appear more realistic does not justify ignoring the substantial body of controlling federal case law.