Wayne WAKEEN, Individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

HOFFMAN HOUSE, INC., Hoffman House Restaurants, Inc., and The Pillsbury Company, Defendants-Appellees.

No. 82–2829.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1983.

Decided Dec. 13, 1983.

As Modified on Denial of Rehearing and Rehearing In Banc Feb. 2, 1984.

Jeff Scott Olson, Julian & Olson, Madison, Wis., for plaintiff-appellant.

Keith C. Hult, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., for defendants-appellees.

Before WOOD and ESCHBACH, Circuit Judges, and GORDON, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Wayne Wakeen, plaintiff-appellant, commenced a class action under Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. §§ 2000e to 2000e–17 (1976)) against defendants Hoffman House Restaurants, Inc., and Pillsbury Co. (hereinafter collectively referred to as "Hoffman House"), alleging sex discrimination in the payment of overtime wages. During the course of the action, the district court denied a motion from Wakeen for leave to file a second amended complaint that was designed to reinstate a previously dismissed claim for lunch break discrimination, and ultimately entered summary judgment in favor of the defendants on the basis that Wakeen's previous state court action barred the federal courts from entertaining his Title VII suit. Wakeen appeals both of these rulings. In addition, Gregory G. Hoffman appeals the district court's denial of his motion for leave to intervene as a named party plaintiff and representative of the class. We affirm the district court on all three issues.

## I

The background facts are undisputed. Hoffman House Restaurants employed Wakeen as a bartender from June 1971 through August 1973, except for a three-month period between December 1971 and March 1972. Wakeen voluntarily terminated his employment. On August 3, 1973, Wakeen filed a complaint with the Equal Rights Division of the Wisconsin Department of Industry, Labor and Human Relations ("DILHR") asserting two counts of sex discrimination against Hoffman House

East: discrimination in the payment of overtime wages, and discrimination in the amount of paid break time allowed. Wakeen filed the same charge with the Equal Employment Opportunity Commission ("EEOC"), but, pursuant to Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), the EEOC deferred to the DILHR for 60 days.

On December 7, 1978, the DILHR Equal Rights Division hearing examiner dismissed Wakeen's complaint. The Labor and Industry Review Commission affirmed the dismissal on April 27, 1979. Wakeen appealed the DILHR's dismissal to the Circuit Court of Dane County without success. On December 31, 1979, the court found that Hoffman House acted involuntarily, paying overtime to women due to a direct order from the DILHR, issued pursuant to a Wisconsin protective law in effect at the time, Wis.Stat. § 103.02.[1] The court concluded that the involuntary nature of Hoffman House's actions absolved Hoffman House of all liability for sex discrimination under the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31–111.395. Upon the advice of counsel, Wakeen decided not to pursue his rights any further through the state courts.

On July 18, 1980, however, Wakeen commenced a Title VII class action in the United States District Court for the Western District of Wisconsin, again alleging sex discrimination in the payment of overtime wages. Wakeen amended his complaint on August 13, 1980, to add an individual claim of sex discrimination in paid break time. Wakeen alleged that female bartenders received a half-hour paid break per shift, while male bartenders received only a fifteen minute break per shift. On March 11, 1982, in response to Hoffman House's motion for a judgment on the pleadings and partial summary judgment, the district court dismissed this portion of Wakeen's case. Wakeen moved for leave to file a

---

* The Honorable Myron L. Gordon, Senior District Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

1. Ind. 74.03, Wis.Admin.Code (1971), promulgated pursuant to Wis.Stat. § 103.02, required

employers to pay overtime to women who worked in excess of 9 hours per day or 48 hours per week. In 1975, the Wisconsin legislature "de-sexed" section 103.02, at which time Hoffman House ceased its practice of paying overtime only to female bartenders.

second amended complaint on May 7, 1982, seeking to reinstate his claim of lunch break discrimination. The district court denied this motion on July 22, 1982. Wakeen does not appeal the district court's initial dismissal of the lunch break discrimination claim, but does appeal the court's denial of his motion to amend.

On May 24, 1982, while Wakeen's motion to amend was pending, Hoffman House filed a motion for summary judgment, arguing that Wakeen's action alleging sex discrimination in the payment of overtime wages was barred by res judicata under *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), due to Wakeen's unsuccessful attempt to press his claim through the state courts. On July 22, 1982, the district court denied Hoffman House's summary judgment motion on the ground that *Kremer* was not to be applied retroactively. In that same order, the court certified the plaintiff's class. On September 22, 1982, however, after a clarification of the law in *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir. 1982), the court announced that it was inclined to grant summary judgment for Hoffman House on res judicata grounds. The court then gave the parties until September 24 to file additional papers.

On September 24, faced with the possible dismissal of Wakeen's complaint, Gregory Hoffman[2] filed his motion for leave to intervene as a named party plaintiff and as one of the class representatives. On October 14, 1982, the district court granted the defendants' motion for summary judgment against Wakeen on the basis of the prior state court proceedings, and rejected Hoffman's last minute attempt to take over as class representative on the ground that he had never filed a charge of discrimination with the EEOC. Due to the absence of an adequate class representative, the court vacated its July 22, 1982, order granting class certification.

## II

The main issue in this appeal is whether Wakeen's adverse state court decision bars his Title VII claim of sex discrimination in the payment of overtime wages under *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

The procedural history in *Kremer* bears a remarkable similarity to the case before us now. Alleging that his former employer was guilty of unlawful discrimination in refusing to rehire him, Kremer filed a complaint with the EEOC. Pursuant to section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), the EEOC referred Kremer's charge to the appropriate state agency, the New York State Division of Human Rights ("NYHRD"). The NYHRD rejected Kremer's claim, and the State Human Rights Appeal Board upheld the agency's determination. Kremer again raised his claim with the EEOC, and also petitioned for review in the state courts. The Appellate Division of the New York Supreme Court affirmed the Appeal Board's order. Kremer did not seek review by the New York Court of Appeals.

After the Appellate Division rendered its decision, the EEOC issued a right to sue letter, and Kremer commenced a Title VII action in federal court. The district court dismissed Kremer's complaint on the grounds that under res judicata the adverse state court decision barred further action on Kremer's claim in the federal courts. 477 F.Supp. 587 (S.D.N.Y.1979). The Second Circuit affirmed. 623 F.2d 786 (2d Cir. 1980).

The Supreme Court upheld the dismissal of Kremer's federal action, ruling that 28 U.S.C. § 1738[3] requires a federal court in a

---

**2.** Gregory Hoffman is not related to the family that previously owned Hoffman House Restaurants, Inc.

**3.** 28 U.S.C. § 1738 provides: "The records and judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken."

Title VII case to give preclusive effect to a state court decision upholding a state administrative agency's rejection of an employment discrimination claim when: (1) the state court's decision would be accorded preclusive effect in the state's own courts; and (2) the procedures followed at the state court level comport with the requirements of due process. *Kremer,* 456 U.S. at 481, 102 S.Ct. at 1897; *accord Unger v. Consolidated Foods Corp.,* 693 F.2d 703 (7th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983).

Wakeen does not dispute that Wisconsin courts would accord the Dane County Circuit Court decision preclusive effect,[4] or that the Wisconsin proceedings satisfy due process requirements. Rather, Wakeen seeks to escape *Kremer* by arguing that *Kremer* should not reach situations where state law and Title VII require different results on the same operative facts.[5] Wakeen contends that even if the DILHR's order directing Hoffman House to comply with the Wisconsin protective laws absolves Hoffman House from liability for sex discrimination under the Wisconsin Fair Employment Act, it does not protect Hoffman House from liability under Title VII. Wakeen concludes that the adverse state court ruling should not bar his Title VII claim.

■ Even if Wakeen's interpretation of Title VII is correct, his argument comes too late. Res judicata extends not only to issues actually raised in a prior proceeding, but also to issues that could have been raised. *See, e.g., Kremer,* 456 U.S. at 465 n. 4, 102 S.Ct. at 1889 n. 4; *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Fleming v. Travenol Laboratories, Inc.,* 707 F.2d 829 at 832 (5th Cir.1983); *Nilsen v. City of Moss Point,* 701 F.2d 556, 560 (5th Cir.1983); *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). Wakeen's federal action is based on the same operative facts, and revolves around the same central issues, as Wakeen's state action: whether Hoffman House can be excused for paying overtime wages to women at the same time that it denied those benefits to men. That a potential response to Hoffman House's defense finds its base in federal law does not mean that Wakeen can bring an independent federal action to assert that response. *Cf. Lee,* 685 F.2d at 200; *Miller-Wohl Co. v. Commissioner of Labor & Industry,* 685 F.2d 1088, 1090 (9th Cir.1982). Having decided to appeal the DILHR's order through the state courts rather than proceed immediately with a Title VII suit, Wakeen should have argued that the agency's order was erroneous because it failed to appreciate the breadth and force of a valid, applicable federal law. *See Brown v. St. Louis Police Department,* 691 F.2d 393, 396 (8th Cir.1982).

Even assuming that the state court could go no further than review the propriety of the DILHR's order, and that Wakeen could not raise an original Title VII complaint in the context of a state court review of an agency action,[6] it was certainly within the

---

4. Wakeen had 30 days in which to appeal the adverse Dane County Circuit Court decision. Wis.Stat. § 227.21 (1981–82). When Wakeen failed to appeal within this statutory time limit, the Circuit Court's opinion became a final judgment of the Wisconsin courts. *Everette v. DILHR,* 6 Empl.Prac.Dec. (CCH) ¶ 8745 (Wis. Cir.Ct. Dane Co. 1973).

5. Research done by this court has revealed a recent case from the Southern District of New York that follows this line of analysis. The Southern District held that an adverse state court decision should not preclude a subsequent federal court action in a situation where the federal and state laws, though facially similar, may lead to different results. The court explained that the application of res judicata

was inappropriate because by deciding that the plaintiff's claim is meritless under state law, the state court did not explicitly or implicitly decide that the claim was meritless under Title VII. *See Reynolds v. New York State Department of Correction Services,* 568 F.Supp. 747, 32 F.E.P. Cases 1103 (S.D.N.Y. Aug. 19, 1983). For the reasons discussed herein, however, we decline to follow *Reynolds.*

6. Wakeen asserts that state courts do not have jurisdiction over Title VII claims, and that even if they do, a Wisconsin court could not entertain a Title VII claim within the context of a Wis.Stat. ch. 227 review of an administrative order. Appellant's Reply Brief at 17. Since these points do not affect the resolution of this case, we assume, *arguendo,* that they are true.

court's power to entertain a claim that the agency's order was erroneous because it allowed a result contrary to federal law. *See* Wis.Stat. § 227.20(8) ("The court should reverse or remand the case to the agency if it finds that the agency's exercise of discretion is . . . in violation of a constitutional or statutory provision."); *cf. Goodyear Tire & Rubber Co. v. Department of Industry, Labor and Human Relations,* 273 N.W.2d 786, 792, 87 Wis.2d 56 (Ct.App.1978) (court entertained claim that a particular interpretation and application of a prior Wisconsin case would require discrimination against men, in violation of Title VII). Having initially pursued a remedy for his alleged wrong in the state courts, Wakeen cannot now enter a federal courtroom and argue that Title VII renders Hoffman House's defense inadequate, an argument Wakeen failed to present to the state court.

In essence, Wakeen seeks to change the focus of the inquiry conducted by a federal court that is presented with a claim for an alleged wrong already adjudicated by a state court. Wakeen wants a federal court in this situation to determine whether the state and federal laws in question, though similar on their face, are truly coextensive on the point in issue (*i.e.,* whether the laws would yield the same result when presented with the same operative facts) before according the state court decision preclusive effect. To require a federal court to conduct this type of focused inquiry, however, not only is unnecessary since res judicata extends to issues that could have been raised in a prior proceeding, but would sanction a form of judicial second-guessing that frustrates the purposes behind section 1738 and is inconsistent with the mode of analysis adopted by the Supreme Court and applied by this circuit.

In its order granting preclusive effect to the decision from the Circuit Court for Dane County, the district court explained that the relevant provisions of the Wisconsin Fair Employment Act and Title VII were virtually identical:[7] "an examination of the applicable provisions of Title VII and the Wisconsin Fair Employment Act (FEA) finds them to be virtually identical; the Wisconsin statute to be consistent with applicable federal law, and subject to the same interpretation." *Wakeen v. Hoffman House Restaurants, Inc.,* No. 80 C 358, slip op. at 6 (W.D.Wis. Oct. 14, 1982). This is the same type of inquiry that the Supreme Court conducted in *Kremer,* and that we conducted in *Lee* and *Unger.*[8] To require a more specific examination into whether facially identical federal and state laws might yield different results before a federal court can grant preclusive effect to an otherwise final and binding state court decision based on the same operative facts would effectively nullify *Kremer* and frustrate fulfillment of the goals underlying section 1738 and the traditional theories of res judicata and collateral estoppel: relieving parties of the costs and vexation of multiple lawsuits, conserving judicial resources, fostering reliance on adjudication, and promoting comity between state and federal courts. *See Allen v. McCurry,* 449 U.S. at 94–96, 101 S.Ct. at 414–415. No state court decision would be accorded preclusive effect by the federal courts regardless of whether the decision would be entitled to preclusive effect in that state's courts until the federal court conducted Wakeen's focused inquiry. This is contrary to the Supreme Court's holding that section 1738 precludes a federal court from entertaining a Title VII action once a state court has rejected a claim of discrimination arising from the same set of circumstances. The Court emphasized

7. *Compare* Wis.Stat. §§ 111.321–.325 *with* 42 U.S.C. § 2000e–2(a)(1). Wakeen does not dispute the district court's finding that the two laws are effectively identical on their face. Wakeen simply contends that despite any facial similarity, the two laws would yield different results in his case.

8. Noting the "New York law is at least as broad as Title VII," *Kremer,* 456 U.S. at 479 n. 20, 102 S.Ct. at 1896 n. 20, the Supreme Court rejected the plaintiff's argument that his state court judgment should not bar his Title VII action because New York courts failed to resolve the specific issue facing the district court. *See also Unger,* 693 F.2d at 705; *Lee,* 685 F.2d at 200.

that "the legislators did not envision full litigation of a single claim in both state and federal forums." *Kremer,* 456 U.S. at 474, 102 S.Ct. at 1893 (footnote omitted).

Moreover, allowing a federal court to adjudicate a Title VII claim arising out of the same facts as a discrimination claim conclusively adjudicated in the state courts simply because the plaintiff did not argue to the state court that the state law, if interpreted unfavorably to the plaintiff, allows a result that is contrary to federal law, produces harms that go beyond the harms traditionally associated with allowing multiple lawsuits: allowing such an exception to *Kremer* would adversely affect the *quality* of adjudication at the state level. Stripping state court judgments of finality whenever a party argues to a federal court that the state law upon which his prior adjudication was based yields a result contrary to federal law would:

> lessen[ ] the incentive for full participation by the parties and for searching review by state officials. Depriving state judgments of finality not only would violate basic tenets of comity and federalism, *Board of Regents v. Tomanio,* 446 U.S. 478, 488, 491–92 [100 S.Ct. 1790, 1797, 1798–99, 64 L.Ed.2d 440] (1980), but also would reduce the incentive for States to work towards effective and meaningful antidiscrimination systems.

*Kremer,* 456 U.S. at 478, 102 S.Ct. at 1896 (footnote omitted).

As we said above, if the Wisconsin protective law Hoffman House relied upon did not provide a valid defense because it was inconsistent with Title VII, Wakeen should have argued that to the state court. If Wakeen worried that a state court would be unsympathetic, he should have bypassed the state courts altogether and gone directly to federal court. "The doctrine of *res judicata* contemplates, at a minimum, that courts be not required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty." *Nilsen v. City of Moss Point,* 701 F.2d at 563. By appealing the DILHR's adverse finding at the state level, Wakeen locked himself out of the federal courts. Under section 1738 and traditional res judicata theory, we lack the power to let him in.

### III

The next issue is whether the district court erred in not allowing Wakeen leave to file a second amended complaint that was designed to reinstate a previously dismissed claim for discrimination in lunch breaks.[9]

On March 11, 1982, the district court dismissed Wakeen's lunch break discrimination claim for failure to present a claim for which relief can be granted. The court found that all bartenders were entitled to a one-half hour break during each eight-hour period, that female bartenders, all working the day shift, used their break for lunch, and that male bartenders working the night shift "apparently worked (voluntarily) for 15 minutes at the end of each shift and quit 15 minutes early." On May 11, 1982, Wakeen moved for leave to file a second amended complaint to reinstate the lunch break discrimination claim. In relevant part, the only substantive difference between Wakeen's proposed second amended complaint and the previously dismissed portion of his first amended complaint, is that the second amended complaint specifically alleged that male bartenders were "required" to work for an average of fifteen minutes at the end of each shift.[10] After a hearing, the

---

**9.** Defendants contend that there was no error in the district court's denial of leave to amend because the lunch break discrimination claim, like the overtime wages discrimination claim, is barred by res judicata. Wakeen answers that since the defendants did not raise their res judicata defense with respect to the lunch break discrimination claim in the court below, they cannot raise it on this appeal because factual questions exist as to whether Wakeen had a full and fair opportunity to litigate his lunch break claim in the state proceedings. Because we affirm the district court on other grounds, we need not address these contentions.

**10.** In relevant part, the first amended complaint alleged:

> 19. During this period [of plaintiff's employment with defendant], female bartenders

district court denied the plaintiff's motion to amend. The court recognized that leave to amend should be freely given when justice requires, Fed.R.Civ.P. 15(a), but concluded that this was not such a case. We agree.

■ While Wakeen correctly points out that this circuit takes a liberal view of Rule 15(a), *see Guse v. J.C. Penney Co.,* 570 F.2d 679, 680 (7th Cir.1978) (on rehearing), leave to amend is discretionary, and we will reverse a district court only for an abuse of that discretion. *United States Labor Party v. Oremus,* 619 F.2d 683, 692 (7th Cir.1980); *see also* 3 J. Moore, Moore's Federal Practice ¶ 15.08, at 15–84 (2d ed. 1983). It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined. *Kasey v. Molybdenum Corporation of America,* 467 F.2d 1284, 1285 (9th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972).

■ The trial court dismissed Wakeen's lunch break discrimination claim on March 11, 1982. It is fair to surmise from the transcript of the July 21, 1982, hearing on the motion to grant leave to amend that the trial judge did not believe that Wakeen had presented anything that warranted bringing the lunch break discrimination claim

back into the lawsuit at that time. While Wakeen's proposed amendment stated that he and other male bartenders were "required" to work for fifteen minutes at the end of each shift, Second Amended Complaint ¶ 18, the trial judge was not convinced after the July 21, 1982, hearing that Wakeen's claim was any stronger then than it was when the court granted summary judgment against Wakeen on this claim four months earlier. Under these circumstances, the trial judge was within his discretion in denying Wakeen the opportunity to amend his complaint again in order to reinstate the previously denied claim. *See Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir.1979) (per curiam) (citations omitted) (a court may properly refuse a request to amend "where the proposed amendment fails to allege facts which would support a valid theory of liability, or where the party moving to amend has not shown that the proposed amendment has substantial merit"); *Fisher v. Hartford Accident & Indemnity Co.,* 329 F.2d 352, 354 (7th Cir.1964) (amendment designed to meet jurisdictional requisite after prior dismissal of complaint by increasing expenses incurred by attorney properly denied where plaintiff "did not make any showing, outside of the bare increase in figures, to substantiate the increase").

were entitled to a paid half-hour break in the middle of their shift. Female bartenders normally ate lunch during this half-hour break.

20. During this period, male bartenders were entitled to a paid half-hour break at the end of their shift. Male bartenders normally worked through half of this break (15 minutes) and completed their shift 15 minutes earlier. As a result, male bartenders were paid one-quarter of an hour less than female bartenders.

The relevant portion of the proposed second amended complaint stated:

16. During this period, female bartenders were entitled to a paid half-hour break in the middle of their shift. Female bartenders normally ate lunch during this half-hour break.

17. When Mr. Wakeen was employed, he was told by management that male bartenders did not receive a paid break of one-half hour or any other duration at the mid-point of their evening shifts because these breaks would have come at a prime time for the

receipt of customer tips. Mr. Wakeen was told by management that, in lieu of a paid half-hour break at the mid-point of their shifts, male bartenders received, in effect, a paid one-half hour break at the end of their shifts in that, while allowed to leave work at one o'clock a.m., they were paid until one-thirty a.m. Mr. Wakeen was offered no choice in this matter.

18. In actual practice, Wakeen and other male bartenders at Hoffman House East were not permitted by their superiors to leave work at one o'clock a.m., but were required to work until, on the average, one-fifteen a.m. Still, they were paid for a work period extending to one-thirty a.m. As a result, male bartenders were paid on the average for all hours actually worked plus a quarter-hour paid terminal break, while female bartenders were paid for all hours actually worked plus a half-hour paid break. This practice constituted sex discrimination in violation of Title VII.

## IV

The final issue is whether the district court erred in denying Gregory G. Hoffman, a purported member of the class,[11] leave to intervene on the ground that Hoffman never filed a charge of discrimination with the EEOC, a prerequisite to obtaining a right to sue under Title VII.

Under Rule 24(b) of the Federal Rules of Civil Procedure, allowing intervention is discretionary. This court will not overrule the district court without a showing of an abuse of that discretion. *Federal Deposit Insurance Corp. v. Hanrahan,* 612 F.2d 1051, 1053 (7th Cir.1980). There was no such abuse in this case. On the contrary, it would have been an abuse of discretion if the district court had allowed the intervention.

On July 22, 1982, after initially denying the defendants' motion for summary judgment on res judicata grounds, the district court certified the class of "All male bartenders employed by Hoffman House Restaurants, Inc. in Wisconsin who worked overtime and who were not paid the same overtime rate paid female bartenders at any time between August 3, 1971 and April 30, 1974." At a hearing on September 22, 1982, however, the district court indicated that it was inclined to reconsider and to enter summary judgment against Wakeen, an action that would necessitate vacating the prior certification order, since Wakeen was the only named plaintiff. Before making a final decision the court gave the parties until September 24, 1982, to file additional papers.

On September 24, Hoffman filed a motion for leave to intervene, alleging that he was a member of the class, and that he wished to assist Wakeen in representing the class. In an order dated October 14, 1982, the district court officially granted the defendants' motion for summary judgment, thus dismissing Wakeen's claims. At the same time, the court denied Hoffman's motion for leave to intervene and consequently vacated the class certification for lack of an adequate class representative.

The enforcement provisions of Title VII require an aggrieved person to file a written charge with the EEOC as a condition precedent to seeking judicial relief. *See* 42 U.S.C. § 2000e–5(e), (f)(1). Hoffman argues that the court should allow him, as a member of the class, to rely on Wakeen's EEOC charge and right to sue letter, and thus grant Hoffman's motion to intervene. Hoffman relies primarily on *Vuyanich v. Republican National Bank of Dallas,* 505 F.Supp. 224 (N.D.Tex.1980), and *Romasanta v. United Airlines, Inc.,* 537 F.2d 915 (7th Cir.1976), aff'd sub nom. *United Airlines v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). The rules announced in these cases do not, however, apply in Hoffman's situation.

*Vuyanich* allowed three class members to intervene as representatives of various subclasses despite their failure to file EEOC charges. The court held that the subclass representatives did not have to meet the jurisdictional base; rather, the representatives could rely on the EEOC charges of the two named plaintiffs. *Vuyanich,* 505 F.2d at 238. *Vuyanich* does not, however, stand for the proposition that anyone labeled an "intervenor" should be automatically exempt from the Title VII filing requirement. The court simply allowed non-filing class members to represent subclasses *in a suit where the named plaintiffs met the jurisdictional prerequisites,* holding that "intervenors who assert claims common to those asserted by *existing* plaintiffs may travel on *those* plaintiffs' complaints." *Id.* (emphasis added).

In *Wakeen,* Hoffman does not seek to represent a subclass, but seeks to take over as the sole representative of the entire class. Since Wakeen's claim has been dismissed in its entirety, Hoffman, unlike the three intervenors in *Vuyanich,* has *no* juris-

---

11. The defendants allege that Gregory Hoffman was paid for overtime work and thus cannot intervene because he is not a member of the class. Appellee's Brief at 37–39. We need not consider this contention since we affirm the district court's denial of leave to intervene on other grounds.

dictional base left to stand on. Without one, he cannot replace Wakeen and wage this suit on behalf of himself or other members of the class. *See also Hodge v. McLean Trucking Co.,* 607 F.2d 1118, 1121 (5th Cir.1979); *Inda v. United Air Lines, Inc.,* 565 F.2d 554, 559 (9th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978).

*Romasanta v. United Airlines, Inc.,* 537 F.2d 915 (7th Cir.1976), *aff'd sub nom. United Airlines v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), does not, as Hoffman contends, dictate a contrary result in this circuit. In *Romasanta,* the class representatives refused to appeal an adverse class determination. This court suspended the Title VII filing requirement to allow other members of the class to take over the appeal, holding that when the class champion abdicates, other members of the class may intervene. *Id.* at 918–19. We were concerned that refusing to allow the class to appeal an adverse determination when their champion abdicates "would permit one member of the class to obtain benefits greater than other members." *Id.* at 919.

Wakeen did not abdicate at a point where the suit had gone far enough to affect the rights of other class members. Wakeen was involuntarily eliminated before the court made any determinations on the merits of the class claims. *Romasanta* is distinguishable, therefore, because denial of Hoffman's motion to intervene compromises no male bartender's rights, and creates no problem of inequality among class members.

Moreover, if the court had not initially denied the defendants' summary judgment motion, the court never would have certified the class, and Hoffman never would have had the opportunity to even *request* intervention. Hoffman attempts to use the district court's initial mistake in not immediately dismissing Wakeen's overtime wage discrimination claim to circumvent the process by which one obtains a right to sue under Title VII.

The Supreme Court was confronted with a somewhat analogous situation in *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court held that a Title VII plaintiff bringing a race discrimination case cannot circumvent the specific requirements of Rule 23 of the Federal Rules of Civil Procedure to maintain a class action even though "racial discrimination is by definition class discrimination." *Id.* at 157, 102 S.Ct. at 2370 (footnote omitted). The Court noted that "nothing in the [Title VII] statute ... indicate[s] that Congress intended to authorize such a wholesale expansion of class-action litigation." *Id.* at 159, 102 S.Ct. at 2371. Similarly, nothing in Title VII suggests that the filing of a charge by one person obviates the need for any other similarly aggrieved person to file such a charge before obtaining the right to sue. *See Hodge v. McLean Trucking Co.,* 607 F.2d 1118, 1121 (5th Cir.1979); *Inda v. United Air Lines, Inc.,* 565 F.2d 554, 558–59 (9th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). Even a person who seeks to intervene and save a suit initiated by one who had properly obtained a right to sue cannot circumvent these procedural requirements if the one who had the right to sue was never properly before the court to begin with. Without his own key to the federal courthouse, Hoffman cannot now intervene and wage a Title VII class action simply because the district court incorrectly opened the door for Wakeen—a mistake the court subsequently corrected.

We hold, therefore, that a class member who does not meet the procedural prerequisites for waging a Title VII suit may not use the guise of a motion to intervene to take over as the sole class representative for someone who initiates but is not legitimately able to continue a class action. To hold otherwise would make a mockery of the concept of a right to sue and of the procedures by which one obtains the right.

The judgment dismissing Wakeen's complaint and vacating the class certification is affirmed.