Thomas Lee EICHMAN, Plaintiff-Appellant,

v.

INDIANA STATE UNIVERSITY BOARD OF TRUSTEES, David Rice, Donald Bennett, James Blivens, Robert Reid, Alan C. Rankin, James D. Acher, Rex Breeden, Charles W. Ainley, William L. Hitch, Herbert Lamb, Nancye T. Mitchell, and James T. Morris, Defendants-Appellees.

No. 78-1645.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1979.

Decided April 25, 1979.

As Amended May 9, 1979.

---

1. See, e. g., Zimek v. Illinois National Casualty Co., 370 Ill. 572, 19 N.E.2d 620 (1939).

Virginia O'Leary, Oakland City, Ind., for plaintiff-appellant.

Joseph A. Yocum, Evansville, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and EAST, Senior District Judge *.

FAIRCHILD, Chief Judge.

This case arises from the nonreappointment of a University faculty member who had been employed under a series of one year probationary contracts. The district court granted a motion for summary judgment filed by the University defendants and this appeal followed. We affirm in part, reverse in part, and remand for further proceedings.

Thomas Eichman, the plaintiff-appellant, was first employed by Indiana State University, at the Evansville Campus (ISUE), in September, 1970. That year, and in each succeeding year through the 1974–75 academic year, he received a one year regular probationary appointment as an assistant professor of German. In May, 1974 he was notified that he would not be reappointed at the conclusion of the 1974–75 academic year. After a hearing held in April, 1975 the University Hearing Committee concluded that Eichman had failed to establish that his non-retention was in violation of his right to academic freedom. This lawsuit, charging the defendants with violating the plaintiff's constitutional rights to free speech, liberty, property, equal protection, and substantive and procedural due process, was filed in April, 1976. As amended, the complaint also included a Title VII count and a state law count alleging a breach of contract. The plaintiff filed a motion for partial summary judgment on the free speech, substantive due process, equal protection, liberty, and privacy aspects of his complaint. The defendants responded by asking the court to treat a previously filed motion to dismiss as a motion for summary judgment on all counts. The plaintiff's motion was denied, and the defendants' granted, on March 24, 1978. The several claims dealt with will be discussed below.

### THE TITLE VII CLAIM

In his second amended complaint the plaintiff alleged that his employment was

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

terminated and that he was denied the opportunity to teach summer school because he "actively participated in assisting a fellow faculty member, Marion Iglehart, who asserted her rights under Title VII to retain her faculty position in the face of alleged sex discrimination by the defendant." The Title VII claim was dismissed by the district court on grounds that (a) Title VII was intended to protect persons against discrimination based on race or otherwise impermissible classifications and the plaintiff had not alleged that he was a member of a racial minority or that there were racial or sexual overtones in the action taken against him; (b) that plaintiff's allegations were conclusory in nature and failed to specify either how he assisted his fellow faculty member or what the action being taken against her was; (c) that the evidence presented was void of any substantive factual allegations supporting a Title VII claim; and (d) that the plaintiff had not satisfied the jurisdictional prerequisite of filing a timely charge with the EEOC.

■ There was no ambiguity in the statutory language on which plaintiff relies. Section 704 of Title VII, (42 U.S.C. § 2000e–3) states:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

We think it clear that this section extends protection to all who "assist" or "participate" regardless of their race or sex. The plaintiff alleged that he assisted a woman who was trying to exercise her Title VII rights to retain her job and that his discharge was in retaliation for that assistance. Referred to in the complaint, and attached as an exhibit, was the original EEOC complaint which stated that Marion Iglehart, the woman referred to in the complaint, had been terminated and was pursu-

ing both her EEOC and judicial remedies under Title VII. While the plaintiff's complaint might have been drawn with more precision, we hold that it states a claim under Section 704. *See Novotny v. Great American Federal Savings*, 584 F.2d 1235 (3rd Cir. 1976), *cert. granted* —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979).

The district court also held that the plaintiff could not maintain a Title VII claim because he had not first filed a complaint with the EEOC, a jurisdictional prerequisite to suit. A right-to-sue letter had been issued to the plaintiff, and was attached to the complaint, but the district court found this insufficient since the underlying EEOC complaint had been filed not by the plaintiff but by a colleague, William Sands. The court held that the plaintiff was barred from bringing suit under Title VII, citing *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), for the proposition that a plaintiff cannot rely on an EEOC charge filed by a third party to satisfy the jurisdictional prerequisite.

Although *Evans* does not really discuss the issue, it is undoubtedly true, class action technicalities aside, that the statute requires that a Title VII complaint be presented to the EEOC before action can be brought in district court. Missing from the memorandum entry of the district court, however, is any discussion of the fact that in this case the third party complaint to the EEOC named the plaintiff as a person who was retaliated against by the defendants for his support of Ms. Iglehart. Specifically, the last paragraph of William Sands' EEOC complaint contained these words:

> "[T]he three members of the faculty who tried hardest to help Prof. Iglehart to retain her job have all met with reprisal at the hands of the ISUE administration, or, to be more specific, at the hands of President David Rice and Dean Donald Bennett. For Professor Michael Pasko, Professor Thomas Eichman, and myself have all been denied continuing positions at the university (for 1975–76). It would seem that this is either an odd coinci-

dence or a pattern of reprisal directed at those who oppose, or who have opposed, the administration in the past."

▆▆ Title VII does not require that as a prerequisite to suit an individual alleging discrimination must first file a complaint with the EEOC. Instead, the statutory language speaks of a charge filed "by *or on behalf of* a person claiming to be aggrieved" (42 U.S.C. § 2000e–5(b)) (emphasis added), and states that a civil action may be brought "by the person claiming to be aggrieved" (§ 2000e–5(f)(1)). Since Thomas Eichman was named in William Sands' complaint as a person aggrieved by the University's retaliatory actions, (and the EEOC apparently deemed him a person aggrieved), we hold that the jurisdictional prerequisite was satisfied and the district court erred in dismissing the complaint on that ground. *See Antonopulos v. Aerojet-General Corporation*, 295 F.Supp. 1390 (E.D.Cal. 1968).

Finally, apart from its jurisdictional ruling, it appears that the district court may have considered that the defendants were entitled to summary judgment on the plaintiff's Title VII claim. As already pointed out, we hold that plaintiff stated a claim under Section 704, and the record would not support summary judgment for defendants. The judgment as to the Title VII claims is therefore reversed and the case remanded to the district court for further proceedings.

### THE FREE SPEECH CLAIMS

The record contains a number of memoranda written by the plaintiff during his employment at ISUE. These memoranda, generally speaking, are critical of the University's practices with regard to scheduling and curriculum, particularly in the context of the German program. It is apparent that these memoranda were considered in some fashion in the University's decision not to rehire Dr. Eichman. In the evaluation which prompted the decision not to reappoint the plaintiff, Dr. Blevins, Chairman of the Humanities Division, spoke of the memoranda as evidence of the plaintiff's frustration and hostilities, adding that

"this institution does not have the resources to waste on hostilities and frustrations."

Both the plaintiff and the defendants moved for summary judgment on the free speech aspects of the plaintiff's complaint. The district court granted the defendants' motion, holding that the interdepartmental memoranda were not public speech and therefore not constitutionally protected and, in the alternative, that even if the memoranda were constitutionally protected the plaintiff was discharged not because he wrote the memoranda but rather because his unwillingness to accept the long-range plans for the German program was detrimental to the University.

▆ Since oral argument in this case the Supreme Court has decided *Givhan v. Western Line Consolidated School District*, —— U.S. ——, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). In *Givhan* the Supreme Court refused to draw a distinction between public and private speech, holding that a teacher who expressed her criticism of school policies directly to her principal was entitled to First Amendment protection and could not be discharged for that expression. *Givhan* makes it clear that the district court erred in holding that the memoranda written by Thomas Eichman were outside the scope of First Amendment protection.

▆ There is no question, however, that a public employee may be discharged notwithstanding that employee's exercise of protected speech if the employee was, or would have been, discharged for reasons apart from the exercise of First Amendment rights. *Mt. Healthy Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Hostrop v. Board of Junior College Dist. No. 515*, 471 F.2d 488 (7th Cir. 1972) (*Hostrop I*); *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569 (7th Cir. 1975) (*Hostrop II*). On the record before the district court in this case, however, we cannot say that the defendants were entitled to summary judgment. The evaluation quoted above, along with the

deposition testimony of individual defendants, is sufficient at least to raise an inference that the plaintiff was discharged for his criticism of his employer. There is also, as the district court noted, evidence that suggests that the discharge was the result of the plaintiff's inability to cooperate with school officials in the scheduling and planning of the German program. The conflicting evidence, and the conflicting inferences raised by the evidence, will require credibility determinations that cannot be made apart from trial. The district court's conclusion that the plaintiff was not rehired because "he was unwilling to accept and work within the reality dictated by budget restrictions and student enrollment" is only one of several permissible inferences that could be drawn from the record; it is not a material fact which exists "without substantial controversy." (Fed.R.Civ.P. 56.) It was error to grant summary judgment to the defendants on the free speech claims.

### PROPERTY RIGHTS

■ In his complaint the plaintiff also alleged that he held a property interest in his job, or, more specifically, that he had an "objectively verifiable, reasonable expectation of continued employment." He alleged that the University's failure to reappoint him was deprivation of this right without due process and therefore in violation of the Fourteenth Amendment. The district court held that the plaintiff had failed to present any evidence that he had a right to continued employment by the University. We agree.

The plaintiff concedes that "stringent proof of a property interest by a non-tenured teacher is required" (Appellate brief at 34), but argues that the Supreme Court's decisions in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) allow him to establish that University policies assured him of reappointment absent notification that his work was deficient or unacceptable. The plaintiff particularly relies ·on *Perry v. Sindermann,* which held

that a non-tenured teacher should be allowed the opportunity to prove that the college which employed him had a *de facto* tenure program and that he had tenure under that program. The factual differences between that case and this one, however, are great. In *Sindermann* there was no formal tenure program as such, a fact stressed by the Court (408 U.S. 593, 602, 92 S.Ct. 2694). There were instead official statements that the college encouraged faculty "to feel" that they had permanent tenure and that a teacher who had been employed for seven years or more (Mr. Sindermann had been employed for ten) in the state college and university system had "some form" of job tenure. (408 U.S. 593, 600, 92 S.Ct. 2694). In the present case the plaintiff was employed under a series of one year contracts in a system that specifically provided for tenure at a certain point. The plaintiff never reached that point. While we will not now say that there could never be a case in which a university had a *de facto* tenure policy on which faculty could justifiably rely which was inconsistent with a codified tenure plan, we agree with the district court that nothing in this record (which includes the deposition of Dr. Lawrence Barrett, the plaintiff's "expert" on this topic) suggests that Thomas Eichman had acquired a right to reappointment as a faculty member at ISUE. After a review of the pleadings before the district court we find the plaintiff's claims of fundamentally prejudicial procedural irregularities in the court's grant of summary judgment on this point to be without merit.

### SUBSTANTIVE AND PROCEDURAL DUE PROCESS

■ The Fourteenth Amendment prevents the state from depriving any person of liberty or property without due process of law. As this court has explicitly held, there can be no claim of a denial of due process, either substantive or procedural, absent deprivation of either a liberty or a property right. *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1 (7th Cir. 1974). The district court held that

there had been no invasion of the plaintiff's liberty interest by the defendants and the plaintiff is not challenging that portion of the district court order. (Appellant's brief at 34.) As already stated, the defendants' failure to reappoint Dr. Eichman was not an infringement of any property right held by him. We therefore also affirm the holding of the district court dismissing the plaintiff's claims for violations of substantive and procedural due process. Our decision makes it unnecessary to consider the adequacy or inadequacy of the plaintiff's April, 1975 hearing before the University Hearing Committee.

## EQUAL PROTECTION

Related somewhat to the substantive due process claims discussed above, and to the privacy claims discussed below, is plaintiff's claim that his discharge violated his right to equal protection of the laws. As far as we can interpret it, the plaintiff's position is that he is, or was thought by the University to be, a member of a class of unhappy or incompatible faculty members and was thus subjected to an irrebuttable presumption that as a member of that class he was an unfit teacher. We hold that plaintiff has failed to state a claim and therefore affirm the district court's decision that the plaintiff cannot be entitled to relief under this theory.

## PRIVACY

The plaintiff also alleges that his termination was in violation of his constitutional right to privacy. His counsel argues that "the private right that Thomas Eichman is asserting on behalf of himself and all citizens of the constitutional democracy is the right to be happy or unhappy without fear of reprisal." (Appellant's brief at 51.) On the facts of plaintiff's case we decline to extend the limited privacy doctrine described in *Griswold v. Connecticut*, 381 U.S. 471, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) to cover this situation, and therefore affirm the district court's order of dismissal of the plaintiff's sixth cause of action.

## CONCLUSION

The judgment of the district court is affirmed in all respects except insofar as it granted judgment to the defendants on the plaintiff's Title VII and free speech allegations, and except insofar as it dismissed the plaintiff's pendent state law claims solely because there were no federal claims remaining in the case. This leaves the decision whether to exercise jurisdiction over the state claims to the district court to decide under ordinary rules. Insofar as the judgment dismissed the state law, Title VII and free speech claims, it is reversed and the cause remanded to the district court for further proceedings in accordance with this opinion. No costs on appeal allowed to either party.