Ruth V. BANAS, Diane L. Betts, Iris E. Feeley and Colette A. Zola, individually and as certified representatives of classes of persons similarly situated, Plaintiffs–Appellants,

v.

AMERICAN AIRLINES, Defendant–Appellee.

No. 91–1044.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1991.

Decided July 29, 1992.

As Corrected, Sept. 1, 1992.

Rehearing and Rehearing En Banc Denied Sept. 29, 1992.

Robert J. Peters (argued), LeAnn Pedersen Pope, Steven M. Bierig, and Glen L. Udell, Brown & Peters, Chicago, Ill., for plaintiffs-appellants.

Mary P. Chapin, Russell M. Pelton (argued), and John Y.E. Lee, Oppenheimer, Wolff & Donnelly, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, WOOD, Jr.,* and KANNE, Circuit Judges.

WALTER J. CUMMINGS, Circuit Judge.

Eight years after their complaint was filed, and in the middle of trial, plaintiffs' Title VII, Civil Rights Act of 1964, sex discrimination case was dismissed on the ground that the statute of limitations had run. The principal issue on appeal is whether the Supreme Court's decision in *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961, provides the rule for deciding the statute of limitations question in this case, or whether the statute of limitations rule in the Civil Rights Act of 1991 applies. The Civil Rights Act of 1991 was enacted after briefs were filed in this Court but before oral argument.[1]

### I.

Plaintiffs are members of the Kiwi Club, an all-female philanthropic and social group consisting of former (and, since 1976, present) American Airlines flight attendants.[2] In early 1970, American created the Kiwi Sales Program ("KSP"), in which interested Kiwi Club members engaged in various speaking and sales promotional activities on American's behalf, in consideration for wages and travel benefits. The named plaintiffs in this case were partici-

---

\* Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case.

**1.** The retroactivity issue was raised by a Federal Rule of Appellate Procedure Rule 28(j) letter. Oral argument was devoted exclusively to that topic.

**2.** A kiwi is a flightless bird native to New Zealand. The record indicates that the Kiwi Club was named for this bird because its membership consisted of stewardesses who "could not fly" because of American's former policy that stew-

ardesses who married or who reached the age of 32 must resign. These policies violated Title VII. *Sprogis v. United Airlines*, 444 F.2d 1194 (7th Cir.1971) (no-marriage policy illegal), certiorari denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Dodd v. American Airlines, Inc.*, EEOC Dec. (CCH 1973) ¶ 6001 (1968) (forced-resignation policy illegal). There was one male Kiwi Club member for a short duration, and the Club now has only female members.

pants in the Chicago-area KSP when it began on September 1, 1970 and, except for Ruth Banas, continue to be participants in the program. In the mid–1970s, American changed the focus of the KSP from public speaking and public relations to more direct assistance to American's sales offices. KSP participants now help other American sales employees by answering phone calls from travel agents, assisting with promotional trips, and even taking full responsibility for some smaller accounts.

During most of the pre-trial proceedings, American maintained that KSP participants were not employees but rather were independent contractors. On the eve of trial, American conceded that the participants had some "indicia" of employment. Indeed, the KSP participants are placed on American's payroll, classified as "Management/Specialist Type 8." Federal and state taxes as well as FICA are deducted from the compensation paid to KSP participants. KSP participants receive an employee card that lists as their starting date of employment the date they start in the KSP program. We will therefore refer to KSP participants as employees in the remainder of this opinion.

American requires KSP employees to work a minimum of 288 hours a year, or 48 "credits" (each credit is a 6–hour block, and originally corresponded to one speaking engagement). By the time of trial, a maximum of 60 credits per year had been established, absent American's administrative approval. Numerous KSP employees have worked more than 60 credits per year. American pays wages to KSP employees based on the hours they work and grants travel passes to KSP employees as their only benefit. The only credit that KSP employees receive for seniority is an increase in the number of annual travel passes they receive. Unlike regular full-time and part-time employees, KSP employees do not receive unlimited travel privileges, vacation and sick pay, health benefits, or other benefits. In addition, KSP employ-

ees receive no credit for their length of service to American as KSP employees when transferring to other jobs in the company.

American regulations specify other categories of employees that receive little or no benefits. Temporary employees, provisional employees, associate employees and college campus sales reps all do not accrue company-wide seniority for their services. Campus sales reps, who are mostly male, apparently receive similar, limited benefits as do KSP employees.

Plaintiff Ruth Banas transferred from the KSP program to a full-time position as a ticket lift agent at O'Hare International Airport in Chicago in May 1979. She was given a seniority date of June 11, 1979,[3] not September 1, 1970, the date she first participated in the KSP program. Within several months after her transfer, Banas became aware that other employees who became ticket lift agents after she did were given higher seniority than she, because they were given credit for their previous full-time and part-time employment. American published a seniority list every quarter that was distributed to all employees so that the employees could knowledgeably bid for shifts or other positions. In September 1980, Banas received a letter stating that she would be laid off. Instead of being laid off, however, she was changed to part-time status.[4] If she had possessed a September 1, 1970, seniority date, Banas would not have been reduced to part-time status. Banas apparently has been reduced to part-time status on several occasions since 1980.

## II.

On September 10, 1981, Banas filed a Charge of Discrimination against American with the Chicago District Office of the Equal Employment Opportunity Commission. After receiving notice of her right to sue American from the EEOC, Banas filed this Title VII class-action complaint on Sep-

---

**3.** Banas' dispute with American that she should have received a May 23, 1979, seniority date rather than June 11, 1979, has been settled and is not at issue on appeal.

**4.** The record does not indicate the exact date Banas was changed to part-time status.

tember 7, 1982. Plaintiff identified two primary classes in her complaint: 1) all females currently employed in KSP, and 2) all females formerly employed in KSP who are now employed in different positions by American. Plaintiff also listed as separate classes those females who would have qualified for one of the above classes but for the fact that their employment was terminated on or after 180 days prior to the filing of Banas' charge with the EEOC.

In April 1983, the district court denied American's motion to dismiss based on Banas' failure to file a timely charge of discrimination with the EEOC. American argued in its motion that Banas knew at least by May 23, 1979, the date of her transfer to a regular full-time position, that she was not receiving seniority credit for her time in the KSP program. This awareness triggered the running of the statute of limitations, according to American, and therefore Banas' filing in September 1981, more than 300 days after May 23, 1979, was untimely. The district court rejected this argument, relying on *In re Consolidated Pretrial Proceedings in Airline Cases*, 582 F.2d 1142 (7th Cir.1978) (later reversed on other grounds at 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)), and *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir. 1982). The court cited *Airline Cases* for the proposition that "when the complained-of policy is still in effect at the time a charge is brought and the policy is applicable to the plaintiff at that time, the violation is continuing and plaintiff's claim cannot be time-barred." R. 27 at 5.

The district court also held in its 1983 opinion that the statute of limitations *did* bar Banas from acting as class representative for current KSP employees because American's policies with regard to current KSP employees no longer affected her. In November 1983, a first amended complaint was filed which added several named plaintiffs who were current KSP employees to act as representatives for this class. No named plaintiff besides Banas, however, ever filed a charge of discrimination with the EEOC.

Plaintiffs' complaint survived two additional motions to dismiss before trial began. In April 1985, Judge Grady denied American's motion to dismiss plaintiffs' class action allegations. The gist of American's argument was that Banas had already been held to be an inappropriate representative for current KSP employees, and that the added plaintiffs who were current KSP employees had not exhausted their administrative remedies. The court agreed that Banas could not act as a representative for current KSP participants, noting that Banas' attack on American's seniority policy means she must prove discriminatory intent, but that the current participants may rely on a disparate impact theory. Nevertheless, Judge Grady concluded that the cases were sufficiently related to justify joinder under Fed.R.Civ.P. Rule 20(a). Judge Grady further held that the new plaintiffs could "piggyback" on Banas' EEOC charge of discrimination because it adequately raised these related claims.

In February 1988, the district court once again denied American's motions to dismiss the case. American had renewed its motion to dismiss in light of this Court's decision in *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163 (1987) (later affirmed at 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989)), which limited the viability of a continuing violation theory in an attack against a seniority system. The district court denied defendant's motion to dismiss (which the court converted to a summary judgment motion), reasoning that there was a genuine issue of material fact whether Banas was aware at the time of her transfer that the seniority policy was discriminatory, *i.e.*, that it treated male part-time employees who transferred to her job differently than it treated her.

Trial began in September 1988. After the plaintiffs concluded their case, the judge decided that Banas was in fact aware of the allegedly discriminatory nature of American's policy by November 1979, thereby making her charge with the EEOC untimely under this Circuit's *Lorance* decision. The court therefore granted American's Fed.R.Civ.P. Rule 41 motion, but

withheld ruling on plaintiffs' Rule 59 motion until the Supreme Court rendered its decision in *Lorance*. After the Supreme Court affirmed *Lorance*, the district court entered a final judgment for American in December 1990.

## III.

■ Title VII actions must be filed with the EEOC within 180 days (or 300 days, if proceedings are initially instituted with a state agency) "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). When an employer acts in a discrete fashion, such as failing to hire or discharging a protected individual, this discrete act clearly triggers the running of the limitations period. In situations involving company policies, it is less obvious when the statute of limitations begins running. Plaintiffs in this case challenge two policies. Banas, as representative of a class of transferees, challenges the denial of seniority credit for the time spent working as a KSP employee.[5] The other named plaintiffs, as class representatives for other current KSP employees, challenge the denial of various benefits that other American part-time employees receive. Whether the alleged unlawful employment practice occurs when a company decides to deny benefits and seniority credit to certain employees, or when these allegedly discriminatory policies operate upon those employees, has confused courts. See Douglas Laycock, *Continuing Violations, Disparate Impact in Compensation, and Other Title VII Issues,* 49 Law and Contemporary Problems 53, 55–61 (No. 4 1986).

In the Civil Rights Act of 1991, Congress added a second paragraph to 42 U.S.C. 2000e–5(e):

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, § 112. The purpose of Section 112 was to overrule the Supreme Court's decision in *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), which concluded that the unlawful employment practice occurs for a facially neutral seniority system only upon its adoption.

■ Since Banas is the only plaintiff who filed with the EEOC, we must decide if her filing was timely. Plaintiffs initially contend that their action is timely even if the 1991 Act is not applied. This contention, however, is without merit, because the *Lorance* decision then controls this case. Banas' claim is analogous to those advanced by the *Lorance* plaintiffs. Like the *Lorance* plaintiffs, Banas complains that her employer decided not to count part of the time she worked at the company for seniority purposes because of her sex. In *Lorance* three female "testers" sued because they were not given credit for plant-wide seniority. The company and its union had agreed to segregate promotion and lay-off decisions for testers (traditionally males), basing them on the employee's seniority *as a tester* and not on plant-wide seniority. *Id.* at 901–902, 109 S.Ct. at 2263. The plaintiffs, like Banas, were later demoted during a reduction in force; presumably they would not have been demoted if their company-wide seniority had been counted. *Id.* at 902, 109 S.Ct. at 2264.

---

**5.** Seniority systems receive special protection under Title VII:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system * * * provided that such differences are not the result of an intention to discriminate * * *.

42 U.S.C. § 2000e–2(h). Because of this provision, disparate impact cannot be used to invalidate a seniority system; intentional discrimination must be shown.

The Supreme Court in *Lorance* concluded that "when a seniority system is nondiscriminatory in form and application, it is the allegedly discriminatory *adoption* which triggers the limitation period * * *." *Id.* at 911, 109 S.Ct. at 2268 (emphasis in original). Only a few limitations temper this harsh rule. The rule does not apply to facially discriminatory seniority systems. In addition, although not discussed by the Supreme Court, we have also indicated that the rule would not apply for a new employee hired by the employer. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989). These limitations on the reach of *Lorance*, however, do not help Banas. American's seniority system is not facially discriminatory, because it does not deny seniority credit only to transferring KSP employees, but it apparently also denied seniority credit to transferring campus sales reps and other associate and temporary employees. Also, even assuming Banas would be considered a "new employee" upon her transfer to the ticket lift agent position, she did not file her discrimination charge within 300 days of this transfer.

Given the similarities of *Lorance* and this case, plaintiffs' attempts to distinguish *Lorance* are unavailing. Plaintiffs initially seize on a footnote in Justice Scalia's opinion which notes that the *Lorance* case involves a competitive seniority system (those used to allocate entitlements to promotion and nondemotion), not a benefit seniority system. *Id.* at 902 n. 1, 109 S.Ct. at 2263 n. 1. Banas asserts that many of her claims—such as her lower vacation benefits—deal with benefit seniority and not competitive seniority, and thus her filing is timely. But the genesis of all her claims is American's failure to give seniority credit for her time as a KSP employee, and relates directly to the very same seniority system that allegedly discriminatorily caused her demotion. We do not think that this lone footnote in the introductory section of *Lorance* saves her filing.

Plaintiffs also claim that American's seniority system is not bona fide under 42 U.S.C. § 2000e–2(h). But, like the seniority system in *Lorance*, American's system is facially neutral. To say that a seniority system is not bona fide is equivalent to saying that it is motivated by discriminatory intent. See *Pullman–Standard Co. v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Simply alleging that the seniority system is not bona fide will not preclude the application of the *Lorance* rule. Finally, plaintiffs have not met their burden for overcoming the presumption that the *Lorance* decision should be applied retroactively, especially since the rule was applied to the plaintiffs in *Lorance*. *James B. Beam Distilling Co. v. Georgia*, — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

■ Plaintiffs assert that even if Banas' filing with the EEOC was time-barred under *Lorance*, other plaintiffs who represent the class of *current* KSP employees should not have been dismissed. This class of plaintiffs does not challenge a seniority system *per se* but rather challenges the reduced level of benefits they receive as compared to other part-time employees. A company that gives more benefits to males than females, when both perform the same work and when not the result of a bona fide seniority policy, violates Title VII. Cf. *Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII."); see also *Webb v. Indiana Nat'l Bank*, 931 F.2d 434, 438 (7th Cir.1991) ("ordinarily, in the case of a continuing unlawful practice, every day that the practice continues is a fresh wrong for purposes of the statute of limitations.").

■ Nevertheless, we somewhat reluctantly conclude that the district court correctly relied on *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238 (7th Cir.1983), in dismissing all the plaintiffs because no one except Banas filed a claim with the EEOC. In *Wakeen*, the plaintiff who filed the EEOC claim on behalf of a class of persons was subsequently found barred by *res judicata*. This Court held that a member of the class, who had not otherwise filed a charge with the EEOC, could not intervene as the class representative. "To hold otherwise would make a mockery of the concept of a right to sue and of the procedures

by which one obtains the right." *Id.* at 1246. Plaintiffs' reliance on *Eichman v. Indiana State University Board of Trustees,* 597 F.2d 1104 (7th Cir.1979), is misplaced. In *Eichman,* we held that a *validly filed* EEOC charge can be relied upon by a plaintiff who did not actually file the charge but upon whose behalf the charge was filed. The obvious difference here is that, as in *Wakeen,* no timely charge has been filed at all.

In 1985, the district court held, perhaps dubiously, that even though Banas could not be a class representative for current KSP employees, the named plaintiffs who were current KSP employees could still rely on her filing with the EEOC in order to maintain their own class action. As it now turns out, Banas' filing was untimely. Under the precedent of *Wakeen,* as discussed above, the entire case must be dismissed. But we note that the court in *Wakeen* stated:

> [plaintiff] did not abdicate at a point where the suit had gone far enough to affect the rights of other class members. [Plaintiff] was involuntarily eliminated before the court made any determinations on the merits of the class claims. *Romasanta* is distinguishable, therefore, because denial of [proposed intervenor's] motion to intervene compromises no [class member's] rights, and creates no problem of inequality among class members.

724 F.2d at 1246.[6] The rights of current KSP employees have similarly not been compromised here. Indeed, Banas is not even the representative for the class of current KSP employees—their rights cannot be determined by a procedural failing of a representative of a *different* class.

## IV.

Under Section 112 of the Civil Rights Act of 1991, Banas' filing would be considered timely because it challenges an intentionally discriminatory seniority system and be-

cause it was filed within 300 days of Banas' being injured by application of that seniority system to her.[7]

The central question is whether the 1991 Act should apply at all to this case. This Court addressed the general question of this Act's retroactivity in *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992) (on petition for rehearing). We concluded in *Mozee* that despite seemingly contradictory Supreme Court precedent, the general rule is that statutes are presumptively applied prospectively and that they will be applied retroactively only in narrow circumstances on appeal. *Id.* at 938. *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), was read to establish the sensible proposition "that statutory provisions impacting substantive rights and obligations will not be retroactively applied." *Id.* at 936.

We further concluded that the general rule of prospective application applies as well to procedural and remedial provisions on appeal. Both *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)—cases that seem to indicate a general rule of *retroactivity*— applied a new rule that did not force any new proceedings on the lower courts or administrative bodies. *Id.* at 937. In addition, *Thorpe* was a case where "the Supreme Court merely forced a government agency to follow procedures after the Court recognized that some procedure was necessary to avoid constitutional due process problems," and *Bradley* was a case where "the court was merely confirming a prior district court order that allowed attorney fees under the private attorney general theory." *Id.* We therefore stated that procedural and remedial provisions may be applied retroactively at the appellate level only in "very limited circumstances." *Id.* at 938. In an opinion largely consistent with *Mozee,* this Court in *Luddington v.*

---

**6.** In *Romasanta v. United Airlines, Inc.,* 537 F.2d 915 (7th Cir.1976), affirmed, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), putative class members were allowed to intervene in order to appeal an adverse class determination when the named plaintiffs declined to do so.

**7.** Although some key dates are missing in this determination, American never disputes that Banas filed her claim within 300 days of being reduced to part-time status.

*Indiana Bell Telephone Co.,* 966 F.2d 225, 229–30 (7th Cir.1992), stated that "the new act is applicable only to conduct engaged in after the effective dates in the act * * *, at least if the suit had been brought before the effective date."

 Under the reasoning of *Mozee* and *Luddington,* Section 112 cannot be applied retroactively on appeal in this case. It is true that, as in *Thorpe* and *Bradley,* applying a new statute of limitations on appeal would not require any reopening of procedures—it would simply allow the case to proceed. But this is not a case where a new statute confirms the prior ruling in the case below; here, Section 112 did quite the opposite: it overturned the basis for the ruling below. For both practical and theoretical considerations, there appears to be little reason for a reviewing court to disturb a judgment based on a law effective after the judgment is entered. Other considerations might be appropriate when the case is still pending in the trial court. Cf. *City Council of Waltham v. Vinciullo,* 364 Mass. 624, 628, 307 N.E.2d 316, 319 (1974) ("statutes which are remedial or procedural should be deemed to apply retroactively to those pending cases which, on the effective date of the statute, have not yet gone beyond the procedural stage to which the statute pertains."). We decline to apply a new statute of limitations to a case already at the appellate stage of proceedings.[8]

This conclusion is confirmed by our understanding of the legislative purpose underlying Section 112. See *Gay v. Sullivan,* 966 F.2d 1124 (7th Cir. June 30, 1992)

(holding provision regarding calculation of Supplemental Security Income benefits prospective based on an analysis of congressional intent). *Lorance* held that the relevant event for the purpose of starting the limitations period was the adoption of the seniority policy. Section 112, on the other hand, lists three determinative events, including the time at which an employee is injured by application of the seniority system. The purpose of this change is clear: to allow employees to challenge facially neutral seniority policies when they are actually injured by them, and not force them to sue the company prematurely, perhaps even when they do not have standing.

There is a sound basis, therefore, for concluding that this new provision should be applied to allow challenges to seniority systems that cause injury to persons *after the effective date of the Act.*[9] Application of Section 112 in those circumstances would seem to be a prospective application of the Act, since the defendant's conduct now includes invoking the seniority policy that causes injury to the employee.[10] The new rule teaches that the mere fact that a seniority policy was adopted 180 or 300 days before its effective date is not dispositive. Nevertheless, Banas is not entitled to the protection of Section 112, because her injuries occurred before the effective date of the Act and her case was filed well before the Act was passed.

The *Mozee* Court discussed, but left unresolved, whether procedural and remedial provisions of the new Act should be applied to entirely new proceedings begun after its passage. *Id.* at 939–40. *Ludding-*

**8.** But see *FDIC v. New Hampshire Insurance Co.,* 953 F.2d 478 (9th Cir.1991) (applying new FIRREA statute of limitations, which was passed after the district court entered its final order).

**9.** Employees who were hired before the effective date of the Act, and whose employers implemented their seniority provisions before the effective date, may not be able to apply this more lenient statute of limitations rule. Applying the new rule in those circumstances may run counter to the general rule that, absent contrary legislative intent, an amendment expanding a statute of limitations cannot revive a claim already barred by the statute of limitations as of the amendment's effective date. *United States v. Kimberlin,* 776 F.2d 1344, 1347 (7th Cir.1985) (dictum), certiorari denied, 476 U.S. 1142, 106

S.Ct. 2251, 90 L.Ed.2d 697; *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1527 (7th Cir.1990); see also Sutherland, Statutory Construction § 41.09 (4th ed. 1986). On the other hand, Congress here may have intended to allow such claims—*i.e.,* it may have intended to change the rule announced in *Lorance* for all employees, not just a particular subclass of employees. Since it is not necessary for the disposition of this case, we need not resolve this issue.

**10.** The question of when the application of a newly enacted statutory provision constitutes a prospective application and when it constitutes a retroactive application was mentioned but not fully developed in *Mozee,* at 939 n. 5. The discussion in this section should not be construed as a retraction from our holding in that case.

*ton* also left this question unresolved. 963 F.2d at 934. This Court can only answer that question definitively when faced with a case actually begun after the effective date of the new Act; therefore, there is no need to add to the general observations in *Mozee* and *Luddington,* which present arguments on both sides of the issue. It should be noted that, although the matter is not entirely free from doubt, statutes of limitations are generally considered to be procedural provisions. *Fust v. Arnar–Stone Laboratories,* 736 F.2d 1098, 1100 (5th Cir.1984) ("Statutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are unconstitutionally cast."); see also *Kalmich v. Bruno,* 553 F.2d 549, 553 (7th Cir.1977), certiorari denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300; *FDIC v. Petersen,* 770 F.2d 141, 142 (10th Cir.1985).

In *Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988), the Supreme Court concluded that there was no constitutional problem with a state applying its own statute of limitations in state court even though it was applying another state's substantive law. This conclusion was based largely on history: "The historical record shows conclusively, we think, that the society which adopted the Constitution did not regard statutes of limitations as substantive provisions, akin to the rules governing the validity and effect of contracts, but rather as procedural restrictions fashioned by each jurisdiction for its own courts." *Id.* at 726, 108 S.Ct. at 2123.[11] Supreme Court holdings that the states and Congress have the power to expand statutes of limitations retroactively also imply that limitations periods are not generally to be viewed as affecting substantive rights. *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945); *International Union of Electrical, Radio & Machine Workers Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441,

50 L.Ed.2d 427 (1976). In *Chase Securities,* the Court stated that

> Statutes of limitations find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. * * * Their shelter has never been regarded as what now is called a "fundamental" right * * *. * * * [T]he history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* 325 U.S. at 314, 65 S.Ct. at 1142.

To summarize, our holding is that Banas' filing cannot now be considered timely because of a change in the statute of limitations rule effective while the ensuing litigation was on appeal.

Judgment is affirmed.

---

**11.** The Court noted that the characterization of statute of limitations as substantive for the purposes of the *Erie* doctrine is largely for the purpose of establishing substantial uniformity of predictable outcome between the case tried in federal court and the one tried in state court. *Wortman,* 486 U.S. at 726–727, 108 S.Ct. at 2124.